**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| **ALSADIK SULIMAN ADAM JADO, Individually and by and through AHMED JEDDAH as his next friend, and in the alternative by and through his attorney in fact IDRESS HAGAR JOGLE SHARIF**<br><br>**Plaintiff,**<br><br>vs. | CIVIL ACTION NO. |
| **IBRAHIM MOHAMED BABIKER MOHAMED**<br>1205 North Prairie Avenue, #12<br>Sioux Falls, South Dakota 57104 | **COMPLAINT AND DEMAND FOR A JURY TRIAL** |
| **SEAN TERRY CHRISTOPHER**<br>633 South Proctor Boulevard<br>Oneida, Tennessee 37841 | |
| **JERRY D. BOGER D/B/A JERRY'S AUTO HAUL**<br>231 Farmwood Drive<br>Statesville, North Carolina 28625 | |
| **AND JERRY'S AUTO HAUL, LLC**<br>Serve:  Kara F. Levesque<br>121 Sparrow Lane<br>Statesville NC 28625 | |
| **FORD MOTOR COMPANY**<br>Serve:  CT Corporation System<br>400 E. Court Avenue<br>Des Moines, Iowa 50309 | |
| And | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**<br><br>**Defendants.** | |

COMES NOW Plaintiff Alsadik Suliman Adam Jado, individually and by and through Ahmed Jeddah as his Next Friend, and in the alternative by and through his attorney in fact, Idress Hagar Jogle Sharif, by and through the undersigned counsel, for his Complaint against the Defendants named herein, states and alleges the following:

## PARTIES, JURISDICTION & VENUE

1.      Plaintiff Alsadik Suliman Adam Jado is a resident of Rochester, New York.

2.      As a result of the Subject Collision set forth below, Plaintiff Alsadik Suliman Adam Jado sustained a traumatic brain injury, rendering him unconsciousness and in a persistent vegetative state.

3.      Ahmed Jeddah is the lifelong friend, close confidant and advisor of Alsadik Suliman Adam Jado, who brings this action as his Next-Friend having filed a Petition to be so duly appointed.

4.      Ahmed Jeddah is a resident of Iowa.

5.      Idress Hagar Jogle Sharif was appointed as the attorney in fact, by the natural father of Plaintiff, Alsadik Suliman Adam Jado, to carry out any and all judicial proceedings regarding the Subject Collision set forth below. Plaintiff's natural parents are currently in the Republic of the Sudan.

6.      Idress Hagar Jogle Sharif is a resident of the State of Illinois and, in the alternative, brings this action as Plaintiff's Attorney in Fact.

7.      Upon information and belief, Defendant Ibrahim Mohamed ("Mohamed") is a resident of Sioux Falls, South Dakota.

8.      Upon information and belief, Defendant Jerry D. Boger d/b/a Jerry's Auto Haul ("Jerry D. Boger") is a citizen and resident of Statesville, North Carolina.

9.     Defendant Jerry D. Boger transacts and conducts business in the State of Iowa as an interstate motor carrier subject to Federal Motor Carrier Safety Regulations promulgated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation.

10.    Defendant Jerry's Auto Haul, LLC ("Jerry's Auto Haul, LLC") is a registered limited liability company in the State of North Carolina with the initial origination documents being filed in March 2018. The only member listed on the North Carolina Secretary of State website is Kara F. Levesque, a citizen and resident of North Carolina.

11.    Defendant Jerry's Auto Haul, LLC transacts and conducts business in the State of Iowa as an interstate motor carrier subject to Federal Motor Carrier Safety Regulations promulgated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation.

12.    Upon information and belief, Defendant Sean Terry Christopher ("Christopher") is a resident of Oneida, Tennessee. Defendant Christopher is a truck driver who drove a Defendant Jerry's Auto Haul, LLC/Jerry D. Boger tractor-trailer, License Plate No. U580791, US DOT No. 1582478 (hereinafter "Tractor-Trailer") the day of the Subject Collision.

13.    Defendant Christopher caused the Subject Collision and Plaintiff's injuries described below. At all times relevant to this Complaint, Defendant Christopher was the employee, agent, representative, or servant of Defendant Jerry's Auto Haul, LLC and Jerry D. Boger.

14.    Defendant Ford Motor Company (hereinafter "Ford") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Dearborn Michigan.

15.    Defendant Ford is registered to conduct business in the State of Iowa and can be served process on its Iowa-based resident agent: CT Corporation System, 400 E. Court Avenue,

Des Moines, Iowa, 50307.

16.     As detailed below, Defendant Ford caused the tortious injury of Plaintiff as a result of Defendant Ford's negligent, reckless, and malicious acts and omissions in the design and manufacture of the Ford Escape that is the subject of this suit. At all times relevant and still today, Defendant Ford regularly does and solicits business, engages in other persistent course of conduct in Iowa, and derives substantial revenue from manufactured products regularly used and consumed in the State of Iowa. At all times relevant and still today, Defendant Ford has and continues to maintain continuous and systematic contacts with Iowa, which constitutes doing business in Iowa. At all times relevant and still today, Defendant Ford was and remains engaged in substantial and not isolated business activities within the State of Iowa.

17.     Prior to September 17, 2016, Defendant Ford designed, engineered, manufactured, marketed, advertised, promoted, distributed, placed into the stream of commerce, and sold a 2005 Ford Escape, VIN 1FMCU03135KA10339 (hereinafter "Subject Vehicle").

18.     At all times relevant, Defendant Ford was engaged in the business of designing, engineering, manufacturing, testing, marketing, advertising, promoting, distributing, placing into the stream of commerce, and selling the Subject Vehicle and for use by the general public.

19.     Defendant Ford is subject to the general jurisdiction of this Court, in that it is a corporation conducting substantial business within the State of Iowa by maintaining continuous and systematic contacts with the State of Iowa, including but not limited to, the transportation of new and used Ford vehicles on Iowa highways and railways for distribution throughout the State of Iowa and the United States. Moreover, Ford is subject to jurisdiction of this Court because the defective Subject Ford Escape was involved in the subject accident within the State of Iowa.

20.     Defendant Ford's business contacts with the State of Iowa are so continuous and

systematic as to render it essentially at home in Iowa such that it could reasonably anticipate being haled into a court in this jurisdiction, and as such, this Court may exercise general jurisdiction over Defendant Ford.

21.     Defendant State Farm Mutual Automobile Insurance Company (hereafter "State Farm") is an Illinois insurance company authorized to do business in the State of Iowa and at all times material was so doing business, issuing policies of insurance in return for premiums, including an automobile insurance policy which is the subject of this lawsuit.

22.     Pursuant to 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this civil action, as the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

23.     On September 17, 2016, at approximately 4:14 p.m., Defendant Mohamed was driving the Subject Vehicle in the right lane, southbound at or near mile marker 9 on Interstate 380 in Johnson County.

24.     Plaintiff was a properly restrained rear-seat passenger in Defendant Mohamed's vehicle.

25.     At the same time, Defendant Christopher was driving his 2001 Freightliner semi-truck and was pulling a fully-loaded trailer owned by Defendant Jerry D. Boger and Jerry's Auto Haul, LLC (hereinafter "Subject Tractor-Trailer") southbound at or near mile marker 9 on Interstate 380 in Johnson County.

26.     At the time of the accident, Defendant Christopher was driving the Subject Tractor-Trailer in the left lane of travel and was passing the Subject Vehicle.

27.     As the Subject Tractor-Trailer was next to the Subject Vehicle, it began to merge

into the right lane occupied by Defendant Mohamed. Defendant Christopher side-swiped Defendant Mohamed's Ford Escape with the Subject Tractor-Trailer.

28.     After being side-swiped by Defendant Christopher, Defendant Mohamed lost control of the Subject Vehicle, causing it to roll several times and enter the west embankment and timber ("Subject Collision").

29.     Several witnesses to the accident informed the reporting officers that Defendant Christopher was driving aggressively prior to the crash and swerved at the Subject Vehicle.

30.     At all times relevant to the Subject Collision, Defendants Jerry D. Boger and Jerry's Auto Haul, LLC owned, rented, leased, operated, or otherwise utilized the Subject Tractor-Trailer.

31.     At all times relevant to the Subject Collision, Defendant Christopher was the employee, agent, representative, or servant of Defendants Jerry D. Boger and Jerry's Auto Haul, LLC.

32.     At all times relevant to the Subject Collision, Defendants Jerry D. Boger and Jerry's Auto Haul, LLC had the right to control the conduct of Defendant Christopher.

33.     At all times relevant to the Subject Collision, Defendant Christopher was operating the Tractor-Trailer for the interests and profitable benefit of Defendants Jerry D. Boger and Jerry's Auto Haul, LLC.

34.     During the rollover, the roof structure of the Subject Vehicle collapsed, and the side-windows broke. Despite being properly restrained, due to the defective restraint and seat system, Plaintiff was ejected from the vehicle, causing him to sustain, among other things, a severe brain injury, rendering him in a state of coma.

35.     As a direct and proximate result of the Subject Collision and Defendants' negligent acts and omissions, Plaintiff suffered severe and permanent injuries, and as a result has suffered

past and future medical costs, mental anguish, loss of enjoyment of life, scarring, pain, lost wages, and impaired earning capacity.  All of Plaintiff's injuries are permanent, progressive and disabling in nature.

36.     At all times relevant, Defendant Jerry D. Boger and/or Defendant Jerry's Auto Haul, LLC was acting by and through its actual and/or ostensible employee and agent, Defendant Christopher.

37.     At all times relevant, Defendant Christopher was acting within the scope and course of his employment and/or agency for Defendant Jerry D. Boger and Defendant Jerry's Auto Haul, LLC.

38.     Defendants each caused, or contributed to cause the injuries sustained by Plaintiff, and as such, the independent acts and/or omissions of Defendants resulted in indivisible injuries to Plaintiff. As a result, Defendants are jointly and severally liable for the injuries to Plaintiff.

## COUNT I – NEGLIGENCE
### (Defendant Mohamed)

39.     Plaintiff incorporates by reference each and every statement, allegation, and averment contained in the paragraphs above as if fully set forth herein.

40.     Defendant Mohamed, as the driver of the Subject Vehicle in which Plaintiff was a passenger, owed Plaintiff a duty of care.

41.     Defendant Mohamed breached this duty and was negligent in the operation of the Subject Vehicle at the time of the Subject Collision. Defendant Mohamed's negligence includes but is not limited to:

        a.     Defendant Mohamed drove at an excessive speed;

        b.     Defendant Mohamed failed to maintain a proper lookout;

        c.     Defendant Mohamed was inattentive in his driving of the Subject

Vehicle;

d.    Defendant Mohamed failed to swerve, brake, or otherwise act in order to avoid collision with Freightliner truck driven by Defendant Christopher, which Defendant knew or by the use of the highest degree of care should have known was likely to occur; and,

e.    Defendant Mohamed allowed his vehicle to collide with Defendant Christopher's vehicle.

42.    Defendant Mohamed's negligence was the actual and proximate cause of the damages and injuries to the Plaintiff.

43.    As a direct and proximate result of the acts and omission of Defendant Mohamed, Plaintiff has sustained the following damages:

a.    Past, present and future medical and rehabilitation expenses;

b.    Pain and suffering and psychological anguish that causes Plaintiff to lose enjoyment of life;

c.    Impairment of general health, strength and vitality;

d.    Lost wages; and

e.    Impaired earning capacity.

WHEREFORE Plaintiff prays for judgment against Defendant Mohamed, jointly and severally, in an amount of just, reasonable, and adequate compensation for Plaintiff's injuries, together with interest as allowed by law, and the costs of this action.

## COUNT II – NEGLIGENCE
### (Defendant Sean Christopher and Defendants Jerry D. Boger d/b/a/ Jerry's Auto Haul and Jerry's Auto Haul, LLC through Vicarious Liability)

44.    Plaintiff incorporates by reference each and every statement, allegation, and averment contained in the paragraphs above as if fully set forth herein.

45.    In operating the Subject Tractor-Trailer upon a roadway in the State of Iowa,

Defendants Christopher, Jerry D. Boger, and Jerry's Auto Haul, LLC owed a duty of care to Plaintiff.

46.    Defendants Christopher, Jerry D. Boger, and Jerry's Auto Haul, LLC, breached their duty of care and were negligent in at least the following respects:

a.    Defendant Christopher drove aggressively and recklessly at the time of the accident;

b.    Defendant Christopher failed to maintain a proper lookout;

c.    Defendant Christopher failed to keep the Subject Tractor-Trailer under control at all times in violation;

d.    Defendant Christopher improperly changed lanes;

e.    Defendant Christopher failed to stop, swerve, or timely apply his brakes when there was sufficient time to do so in order to prevent his Tractor-Trailer from running into the Subject Vehicle;

f.    Defendant Christopher drove at an excessive speed;

g.    Defendant Christopher operated the Subject Tractor-Trailer while his ability and/or alertness was so impaired, or so likely to become impaired, through fatigue, illness or other cause, as to make it unsafe for him to operate the Subject Tractor-Trailer;

h.    Defendant Christopher failed to verify that the right driving lane on Interstate 380 was clear or open prior to merging into the lane; and,

i.    Defendant Christopher collided with the Subject Vehicle.

47.    The above-referenced negligent acts and omissions were the direct and proximate cause of the subject incident and Plaintiff's injuries.

48.    Defendant Jerry D. Boger and Defendant Jerry's Auto Haul, LLC are vicariously liable for the negligent acts and/or omissions of Defendant Christopher in that Defendant Jerry D. Boger and Defendant Jerry's Auto Haul, LLC were acting by and through their agent, servant, and/or employee – Defendant Christopher – at the time that Defendant Christopher engaged in such negligent acts and/or omissions.

9

49.     As a direct and proximate result of the acts and omission of Defendants Christopher, Jerry D. Boger, and Jerry's Auto Haul, LLC, Plaintiff has sustained the following damages:

      a.     Past, present and future medical and rehabilitation expenses;

      b.     Pain and suffering and psychological anguish that causes Plaintiff to lose enjoyment of life;

      c.     Impairment of general health, strength and vitality;

      d.     Lost wages, and

      e.     Impaired earning capacity.

50.     Furthermore, the conduct of Defendants showed complete indifference to or conscious disregard for the safety of others, including Plaintiff, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter them and others from like conduct.

WHEREFORE Plaintiff prays for judgment against Defendants Christopher, Jerry D. Boger d/b/a Jerry's Auto Haul, and Jerry's Auto Haul, LLC, jointly and severally in an amount of just, reasonable, and adequate compensation for Plaintiff's injuries and punitive or exemplary damages in amount sufficient to punish Defendants for their conduct and to deter Defendants from engaging in similar conduct in the future, together with interest as allowed by law, and the costs of this action.

## COUNT III – NEGLIGENCE PER SE
**(Defendant Sean Christopher and Defendants Jerry D. Boger d/b/a/ Jerry's Auto Haul and Jerry's Auto Haul, LLC through Vicarious Liability)**

51.     Plaintiff incorporates by reference each and every statement, allegation and averment contained in the paragraphs above as if fully set forth herein.

52.     The Subject Incident and Plaintiff's injuries and damages described herein are the direct and proximate result of Defendant Christopher, Jerry D. Boger, and Jerry's Auto Haul, LLC's violations of one or more of the following statutes in one or more of the following particulars:

a.      Failing to operate the Subject Truck at a careful and prudent speed given the traffic, surface, and width of the highway and of any other conditions then existing in violation of Iowa Code § 321.285.1;

b.      Failing to keep the Subject Truck under control at all times in violation of Iowa Code §321.288.1;

c.      In passing Defendant Mohamed's vehicle on the left, failing to wait until he was safely clear of Defendant Mohamed's vehicle before returning to the right lane, in violation of Iowa Code § 321.299;

d.      Failed to operate the Subject Tractor-Trailer in a careful and prudent manner and failed to exercise the highest degree of care, in violation of 49 C.F.R. § 392.3, in that he did not keep a careful lookout;

e.      Failed to operate the Tractor-Trailer in a careful and prudent manner and failed to exercise the highest degree of care, in violation of 49 C.F.R. § 392.3, when his ability or alertness was so impaired through fatigue, illness, or another cause, as to make it unsafe for him to begin or continue to operate the Tractor-Trailer;

f.      Failed to operate the Tractor-Trailer in a careful and prudent manner and failed to exercise the highest degree of care, in violation of 49 C.F.R. § 392.6, in that he drove the Tractor-Trailer under a schedule or between points in such period of time as would necessitate the Tractor-Trailer being operated at speeds greater than those prescribed by the jurisdictions in or through which the Tractor-Trailer was being operated; and/or,

g.      Failed to operate the Tractor-Trailer in a careful and prudent manner and failed to exercise the highest degree of care, in violation of 49 C.F.R. § 392.7, in that he drove the Tractor-Trailer at a time when its parts, accessories, and equipment were not in good working order and/or he failed to make use of necessary parts, accessories and equipment.

53.     The above-referenced Iowa statutes and the Federal Motor Carrier Safety Regulations were enacted and intended to protect Iowa motorists, passengers, and pedestrians from the dangerous operation of vehicles.

54.     The statutes identified above are for the benefit of all persons who are likely to be exposed to injury from their non-observance, including Plaintiff.

55.     At the time of the violations alleged above, Plaintiff was a passenger in a motor vehicle on an Iowa roadway, and thus belonged to the class of persons that the above statutes are intended to protect; and that the conduct of Defendants directly caused or contributed to cause Plaintiff to suffer the severe, permanent and progressive injuries described herein and extreme mental pain and suffering.

56.     The above-referenced violations of Iowa statutes and the Federal Motor Carrier Safety Regulations were the direct and proximate cause of the Subject Incident.

57.     Defendant Christopher's violations of these statutes are the result of his willful and wanton disregard for the rights or safety of others, including Plaintiff.

58.     Defendant Jerry D. Boger and Defendant Jerry's Auto Haul, LLC are vicariously liable for Defendant Christopher's negligence and statutory violations, in that Defendant Jerry D. Boger and Defendant Jerry's Auto Haul, LLC were acting by and through Defendant Christopher as their agent, servant, and/or employee at the time that Defendant Christopher engaged in such negligent acts and/or omissions.

59.     Defendants Jerry D. Boger and Defendant Jerry's Auto Haul, LLC are independently liable for the violations listed above pursuant to Part 390 of the Federal Motor Carrier Safety Regulations.

60.     As a direct and proximate result Defendants' violation of the above-referenced

statutes, Plaintiff suffered severe and permanent injuries. All of Plaintiff's injuries are permanent, progressive and disabling in nature.

61.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has sustained the following damages:

        a.     Past, present and future medical and rehabilitation expenses;

        b.     Pain and suffering and psychological anguish that causes Plaintiff to lose enjoyment of life;

        c.     Impairment of general health, strength, and vitality;

        d.     Lost wages; and

        e.     Impaired earning capacity.

62.     All of the hereinabove specified injuries, and injurious consequences thereof, are severe, permanent and progressive in nature and Plaintiff will continue to suffer pain for so long as he shall live so that Plaintiff has sustained damages in an amount so substantial as to invoke the jurisdiction of this Court. Furthermore, the conduct of Defendants showed complete indifference to or conscious disregard for the safety of others, including Plaintiff, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter them and others from like conduct.

WHEREFORE Plaintiff prays for judgment against Defendants Christopher, Jerry D. Boger d/b/a Jerry's Auto Haul, and Jerry's Auto Haul, LLC, jointly and severally in an amount of just, reasonable, and adequate compensation for Plaintiff's injuries and punitive or exemplary damages in amount sufficient to punish Defendants for their conduct and to deter Defendants from engaging in similar conduct in the future, together with interest as allowed by law, and the costs of this action.

## COUNT IV – NEGLIGENT HIRING, TRAINING, SUPERVISION, AND ENTRUSTMENT
### (Defendants Jerry D. Boger d/b/a Jerry's Auto Haul and Jerry's Auto Haul, LLC)

63.     Plaintiff hereby incorporates by reference each and every statement, allegation and averment contained in the paragraphs above as if fully set forth herein.

64.     Pursuant to Parts 390 *et seq.* of the Federal Motor Carriers Safety Regulations, Defendants Jerry D. Boger and Jerry's Auto Haul, LLC owed the general public, including Plaintiff, a continuing duty to supervise Defendant Christopher and investigate and monitor his ability, fitness and qualifications to operate a commercial motor vehicle in interstate commerce.

65.     Defendant Jerry D. Boger and Jerry's Auto Haul, LLC breached their duty of care, and were negligent in at least the following respects:

    a.     Defendant Jerry D. Boger and Jerry's Auto Haul, LLC, knew, or should have known, that Defendant Christopher lacked the requisite ability, fitness and qualifications to operate the van at the time of his first employment or contracting with Defendant Jerry D. Boger and Jerry's Auto Haul, LLC;

    b.     Defendant Jerry D. Boger and Jerry's Auto Haul, LLC failed to provide adequate and sufficient training to Defendant Christopher such that he could obtain the requisite ability, fitness and qualifications to operate the truck when pulling a trailer;

    c.     Defendant Jerry D. Boger and Jerry's Auto Haul, LLC failed to ensure that Defendant Christopher possessed sufficient knowledge so as to be in a position to safely operate the truck when pulling a trailer;

    d.     Defendant Jerry D. Boger and Jerry's Auto Haul, LLC failed to monitor the activities of Defendant Christopher so as to become aware of his failure to safely operate the truck when pulling a trailer;

    e.     Defendant Jerry D. Boger and Jerry's Auto Haul, LLC entrusted and allowed Defendant Christopher to operate the Subject Tractor-Trailer at a time when they knew, or should have known, that he lacked the requisite ability, fitness and qualifications to safely operate the Subject Tractor-Trailer at the time of the Subject Collision; and/or,

f.      Defendant Jerry D. Boger and Jerry's Auto Haul, LLC entrusted and allowed Defendant Christopher to operate the Subject Tractor-Trailer at a time when they knew, or should have known, that he was not in compliance with one or more of the Federal Motor Carrier Safety Regulations so as to safely operate the Tractor-Trailer.

66.     As a direct and proximate result of the negligent acts and/or omissions of Defendant Jerry D. Boger and Jerry's Auto Haul, LLC, Plaintiff sustained severe and permanent injuries as described above.

67.     Plaintiff further makes claim for punitive damages because the direct conduct of Defendant Jerry D. Boger and Jerry's Auto Haul, LLC showed complete indifference to or conscious disregard for the safety of others, including Plaintiff.  Defendant Jerry D. Boger and Jerry's Auto Haul, LLC knew or should have known that hiring Defendant Christopher, an unqualified, unfit and incompetent driver, failing to adequately train Defendant Christopher in safety and driving, failing to monitor Defendant Christopher, and failing to screen Defendant Christopher would endanger motorists, including Plaintiff, and would severely injury motorists, including Plaintiff, but Defendant Jerry D. Boger and Jerry's Auto Haul, LLC engaged in the negligent and reckless conduct anyway. This showed complete indifference and a conscious disregard for Plaintiff's safety. Said damages would serve to punish Defendants and deter Defendants and others from like conduct.

WHEREFORE Plaintiff prays for judgment against Defendants Jerry D. Boger d/b/a Jerry's Auto Haul and Jerry's Auto Haul, LLC, jointly and severally in an amount of just, reasonable, and adequate compensation for Plaintiff's injuries and punitive or exemplary damages in amount sufficient to punish Defendants for their conduct and to deter Defendants from engaging in similar conduct in the future, together with interest as allowed by law, and the costs of this action.

## COUNT V – DESIGN DEFECT AND PRODUCT LIABILITY
### (Defendant Ford)

68.     Plaintiff hereby incorporates by reference each and every statement, allegation and averment contained in the paragraphs above as if fully set forth herein.

69.     At all times relevant hereto, Defendant Ford was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling Ford Escape vehicles.

70.     Prior to the subject accident, Defendant Ford designed, manufactured, assembled, inspected, tested, distributed, placed into the stream of commerce and sold the Subject Vehicle in the normal course of its business for use by the general public.

71.     At the time the Subject Vehicle left the control of Defendant Ford, it was defective and unreasonably dangerous when put to reasonably anticipated use.

72.     The Subject Vehicle was defective and unreasonably dangerous due to its lack of reasonable and necessary occupant protection, *including, but not limited to*, the following:

    a.    The window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, failed to properly restrain and protect Plaintiff in a foreseeable rollover crash event;

    b.    The window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, lacked adequate design to assure proper performance in foreseeable crash conditions;

    c.    The window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, lacked adequate testing and/or inspection before it was distributed and sold to ensure they were reasonably suitable for their intended purpose and provide adequate occupant protection in foreseeable crash conditions;

    d.    The window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition, as herein described, involving their use and operation;

e.  The design and manufacture of the roof system (A-Pillar, B- Pillar, header and roof rail, and their associated component, failed to provide sufficient strength in the roof, allowing a loss of physical integrity in a reasonably foreseeable crash;

f.  The design and manufacture of the window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, failed to incorporate designs and/or devices (e.g., pretensioners, laminated glass, safety cage, roof reinforcement, pillar reinforcement) to properly restrain and protect Plaintiff in a foreseeable rollover crash event;

g.  The Ford Escape had inadequate and unsafe roof crush resistance in rollover accidents; and,

h.  The Ford Escape was not crashworthy in rollover accidents.

73.  The Subject Vehicle was expected to and did reach the hands of the consumer without substantial change or modification, and was in substantially the same condition on the day of the subject motor vehicle accident as it was when it left the possession and control of Defendant Ford.

74.  The Subject Vehicle was used in a reasonably anticipated manner.

75.  Defendant Ford knew or should have known that the Subject Vehicle would be used without inspection for defect and represented that the Subject Vehicle could be safely used for the ordinary purposes for which it was intended.

76.  As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Plaintiff was ejected from the vehicle and severely injured in the Subject Collision.

77.  As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Plaintiff has sustained the following damages:

a.  Past, present and future medical and rehabilitation expenses;

b.    Pain and suffering and psychological anguish that causes Plaintiff to lose enjoyment of life;

c.    Impairment of general health, strength, and vitality;

d.    Lost wages; and

e.    Impaired earning capacity.

78.    The above conduct of Defendant Ford, *including, but not limited to*, intentionally and recklessly placing a defective and unreasonably dangerous Ford Escape into the stream of commerce; intentionally designing a window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system for the Ford Escape that provided inadequate protection during a foreseeable rollover event; failing and/or refusing to adequately test the Ford Escape for rollover events; refusing to implement necessary engineering design standards to provide protection during a foreseeable rollover event; and, failing and/or refusing to warn customers and the general public of the dangerous and defective Ford Escape showed complete indifference to or conscious disregard for the safety of others, including Plaintiff, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment against Defendant Ford, jointly and severally in an amount of just, reasonable, and adequate compensation for Plaintiff's injuries and punitive or exemplary damages in amount sufficient to punish Defendants for their conduct and to deter Defendants from engaging in similar conduct in the future, together with interest as allowed by law, and the costs of this action.

### COUNT VI – NEGLIGENCE
**(Defendant Ford)**

18

79.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

80.     At all times relevant hereto, Defendant Ford was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling Ford Escape vehicles.

81.     As a motor vehicle designer, manufacturer, distributer and seller, Defendant Ford knew that users of their vehicles could be involved in motor vehicle collisions, and the extent of their injuries would frequently be determined by the design and construction of their vehicles, including the Ford Escape in this case.

82.     Defendant Ford had a duty to exercise reasonable care in the design, testing, manufacture and sale of the Ford Escape.

83.     Defendant Ford breached its duty to exercise reasonable care in the design, testing, manufacture and sale of the Ford Escape in multiple respects, *including, but not limited to*:

   a.   The window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, failed to properly restrain and protect Plaintiff in a foreseeable rollover crash event;

   b.   The window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, lacked adequate design to assure proper performance in foreseeable crash conditions;

   c.   The window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, lacked adequate testing and/or inspection before it was distributed and sold to ensure they were reasonably suitable for their intended purpose and provide adequate occupant protection in foreseeable crash conditions;

   d.   The window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition, as herein described, involving their use and operation;

e.     The design and manufacture of the roof system (A-Pillar, B- Pillar, header and roof rail, and their associated component, failed to provide sufficient strength in the roof, allowing a loss of physical integrity in a reasonably foreseeable crash;

f.     The design and manufacture of the window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system, including their component parts, failed to incorporate designs and/or devices (e.g., pretensioners, laminated glass, safety cage, roof reinforcement, pillar reinforcement) to properly restrain and protect Plaintiff in a foreseeable rollover crash event;

g.     The Ford Escape had inadequate and unsafe roof crush resistance in rollover accidents; and,

h.     The Ford Escape was not crashworthy in rollover accidents.

84.     As a direct and proximate result of the negligent acts and/or omissions of Defendant Ford, Plaintiff was ejected from the vehicle and severely injured in the Subject Collision.

85.     As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Plaintiff has sustained the following damages:

a.     Past, present and future medical and rehabilitation expenses;

b.     Pain and suffering and psychological anguish that causes Plaintiff to lose enjoyment of life;

c.     Impairment of general health, strength, and vitality;

d.     Lost wages; and

e.     Impaired earning capacity.

86.     The above conduct of Defendant Ford, *including, but not limited to*, intentionally and recklessly placing a defective and unreasonably dangerous Ford Escape into the stream of commerce; intentionally designing a window system, roof system (A-Pillar, B- Pillar, header and roof rail), side-curtain airbags, restraint system, and seat system for the Ford Escape that provided inadequate protection during a foreseeable rollover event; failing and/or refusing to adequately test

the Ford Escape for rollover events; refusing to implement necessary engineering design standards to provide protection during a foreseeable rollover event; and, failing and/or refusing to warn customers and the general public of the dangerous and defective Ford Escape showed complete indifference to or conscious disregard for the safety of others, including Plaintiff, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment against Defendant Ford, jointly and severally in an amount of just, reasonable, and adequate compensation for Plaintiff's injuries and punitive or exemplary damages in amount sufficient to punish Defendants for their conduct and to deter Defendants from engaging in similar conduct in the future, together with interest as allowed by law, and the costs of this action.

## COUNT VII – UNDERINSURED MOTORIST COVERAGE

### (Defendant State Farm)

87.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

88.     On September 17, 2016, the 2005 Ford Escape operated by Defendant Mohamed was insured by Defendant State Farm under a policy of insurance, (hereinafter "State Farm Policy"), which policy of insurance was issued by Defendant State Farm and is believed to have provided underinsured motorist coverage for the injuries and damages sustained by Plaintiff as a result of the collision.

89.     The underinsured motorist coverage included in the State Farm Policy provides insurance benefits to the extent of a contractually agreed upon coverage limit.

90.     At the time of the September 17, 2016, accident, the liability insurance coverage carried by some or all of the Defendants, depending on apportionment of fault, was inadequate to compensate Plaintiff for the substantial and permanent injuries and damages he sustained as a result of the accident.

91.     Plaintiff is entitled to recover his damages from Defendant State Farm, up to the limits of the underinsured motorist coverage under the State Farm Policy to the extent that his damages exceed the insurance coverage available from Defendant Mohamed.

WHEREFORE, Plaintiff prays for judgment against Defendant State Farm Mutual Automobile Insurance Company in an amount not to exceed the underinsured motorist policy limits, together with interest thereon as provided by law, and for the costs of this action.

## JURY DEMAND

Plaintiff requests a jury trial on all issues herein.

Respectfully submitted,

Brian P. Galligan AT0002632
Galligan Law, PC
300 Walnut Street, Suite 5
Des Moines, IA 50309
Toll Free: 800-217-9312
Fax: 515-282-0318
bgalligan@galliganlaw.com